331 So.2d 858 (1976)
Mrs. Tatiana Turan DUE
v.
Paul H. DUE.
No. 10725.
Court of Appeal of Louisiana, First Circuit.
April 12, 1976.
Rehearing Denied May 24, 1976.
*859 John J. McCann, New Orleans, for appellant.
David W. Robinson, Baton Rouge, for appellee.
Before SARTAIN, ELLIS and LOTTINGER, JJ.
ELLIS, Judge.
This is a suit by Tatiana Turan Due against her former husband, Paul H. Due, for the rescission of a community property settlement entered into by them on April 2, 1974, and for the inventory, appraisement and partition of the community estate.
Various interrogatories were propounded to defendant by plaintiff, and objections thereto were filed by defendant. Some of these interrogatories related to the professional activities of defendant, who is a practicing attorney at law. The matter was submitted to the court under the following stipulation:
"It is agreed between the undersigned attorneys for the opposing parties in Due vs. Due that with regard to the pending objections to interrogatories and motions to compel answers to interrogatories, hearing thereon will be passed without date; that two issues will be presented to the court for determination: first, whether contingent fee contracts pending as of the date of the dissolution of the community are to be included in the accounting of the community assets, and, second, to what extent defendant is to be required to answer interrogatories 1(a),(e), and (f) of the original interrogatories propounded to him by plaintiff."
The court held, inter alia, that contingent fee contracts between attorney and client do not form part of the community of acquets and gains existing between attorney and spouse, but that expenses incurred in the representation of the clients "may properly form a part of the community."
In reaching his conclusion, the trial judge held that, since the right to the contingent fee did not vest in the attorney until the final successful disposition of the case, the community could have no interest in fees earned under contingent fee contracts in existence but unconsummated as of the date of the dissolution of the community. The trial judge relied on the case of Land v. Acadian Production Corporation of La., 57 F.Supp. 338 (W.D.La. 1941), reversed on other grounds 153 F.2d 151 (5th Cir. 1946), which dealt with the time of vesting of title to an undivided interest in an immovable which was received by an attorney under a contingent fee contract.
*860 We granted writs in this case to review the ruling of the trial court relative to contingent fee contracts.
Contingent fee contracts confer various rights on both attorney and client. The attorney may have only an employment contract granting him a commission on the amount eventually recovered as his fee. He may be granted an interest in the client's claim, under R.S. 37:218. Under that statute, the client's right to settle, dismiss or discontinue his claim may be limited. In any case, the client can always discharge his attorney, but the attorney may be permitted recovery of the value of his services, on a quasi contractual basis, even if discharged for good cause. In some cases, if discharged without good cause, the attorney may be entitled to his full contingent fee. See Smith v. Westside Transit Lines, Inc., 313 So.2d 371 (La.App. 4 Cir. 1975) for an excellent review of the jurisprudence. If the attorney should die prior to consummation of a contingent fee contract, his succession participates in the fee eventually earned in the proportion of the value of his services to the total legal services rendered. Succession of Payne, 155 La. 177, 99 So. 29 (1924).
In all contingent fee contracts, the obligation of the client to pay the attorney is contracted subject to the suspensive condition that the claim be successfully concluded. Articles 2021, 2043, Civil Code. The right of the attorney to enforce the obligation of his client cannot arise until the happening of the condition. This does not mean that a species of right does not exist throughout the existence of the contract. The error of the trial judge in this case, and of the trial judge in the Land case, supra, rests in a failure to recognize the above distinction.
Article 2041 of the Civil Code provides:
"The condition being complied with, has a retrospective effect to the day that the engagement was contracted; if the creditor dies before the accomplishment of the condition, his rights devolve on his heirs."
Commenting on the effects of suspensive conditions and of Article 1179 of the Code Civil, which is the same as Article 2041, supra, Planiol says:
"Its suspensive effect is much more far reaching than that of a term. The right dependent on the happening of a condition precedent has as yet no existence. The condition prevents its coming into being, and it is not even known whether the right will ever come into being. This doubt is the essence of the condition. The owner or the creditor where there is a condition precedent is not therefore, properly speaking, either an owner or a creditor as long as the condition is still pending.
"The simple possibility of the realization of the condition, nevertheless, constitutes a chance which is already considered an asset or a liability. And this is so even if it has not yet become a right. When speaking of credits suspended by a condition, the ancients said: `Nihil adhuc debetur, sed spes est debitum iri.' The conditional right is already transferable when in this state. Though existing only in futuro or in posse it passes to the heirs upon the death of the person who is the beneficiary. During his lifetime he could have ceded it or have renounced it. He is, moreover, allowed to perform such conservatory acts as his interests may require, as, for example, the recordation of a mortgage." 1 Planiol, Treatise on the Civil Law, § 319 (12th ed., Louisiana State Law Institute transl. 1959).
"The condition is a restriction more energetic than the term, since it suspends even the formation of the right. As long as the condition is still pending, one may say that the obligation which is suspends does not exist; one has only the hope that some day it will come into existence.

*861 As the ancients expressed it: `Nihil adhuc debetur, sed spes est debitum iri.' As a consequence, none of the effects which flow from obligations should be produced. Nevertheless, the future creditor already possesses something of which account must be taken: the hope that he has of one day becoming creditor, which is protected by the law and involves in various respects a juridical recognition."
"According to French law the condition which has been fulfilled is retroactive (see Vol. 1). How does such retroactivity apply to obligations and what effects does it produce? The general idea is that the obligation is reputed to have arisen on the day of the contract and not on the day the condition was accomplished." 2 Planiol, supra, §§ 375, 383.
See also 1 Civil Law Translations, § 302 at p. 73 (Louisiana State Law Institute Transl. 1965), in which Aubry and Rau's Cours de Droit Civil Francais is translated as follows:
"Where the suspensive condition is fulfilled, the obligation and its correlative right are considered (in the absence of a contract to the contrary with respect to its effect on the relations between the parties) as having never been subject to a condition. Article 1179."
We are of the opinion that, considering the foregoing, a property right is created by the fictional retrospective effect given to the obligation upon the happening of the suspensive condition. This does not mean that the entire fee is then considered as earned as of the date of the contract. It means that the right to the fee is retrospectively considered as unconditional, once the suspensive condition has occurred.
Under Article 2402 of the Civil Code, the community has an interest in the conditional right. However, the value of that right can be determined only upon the happening of the suspensive condition, because the obligation of the client to pay a fee is dependent on the successful disposition of his claim. In the event of the dissolution of the community, it will participate in the fee in the proportion that the value of services rendered as of the date of dissolution bears to the total services rendered in earning the fee. In the event of termination of the contingent fee contract by discharge of the attorney, the community interest in the fee will be determined in the same fashion once the compensation of the attorney has been determined. The interest of the community would be substantial in a case in which the legal services were complete, and negligible in cases in which the contingent fee contract was recently confected and little work done.
It must be kept in mind that, if the contingent fee contracts under consideration in this case are property of the partnership of which defendant is a member, they cannot be considered as assets of the community. As of the date of its dissolution, the value of the community's interest in the partnership can be determined only after considering all assets and liabilities of the partnership, as well as the provisions of the partnership agreement. Articles 2801 et seq., Civil Code; Dubuisson v. Moseley, 232 So.2d 870 (La.App. 3 Cir. 1970); Cooley v. Slocum, 326 So.2d 491, 492 (La.1976).
Accordingly, the writ is made peremptory, and the case is remanded to the trial court for further proceedings not inconsistent with the expressions herein contained. All costs of this application are to be borne by defendant, and all other costs shall await the final disposition of the case.